# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

| | |
|---|---|
| EURANUS JOHNSON, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | CAUSE NO. 3:12-CV-443 |
| ) | |
| SUPERINTENDENT, ) | |
| ) | |
| Respondent. ) | |

## OPINION AND ORDER

This matter is before the Court on a petition under 28 U.S.C. Paragraph 2254 for Writ of Habeas Corpus by a person in State Custody, filed by Euranus Johnson, a *pro se* prisoner, on August 21, 2012 (DE #1). For the reasons set forth below, the petition (DE #1) is **DENIED**, and the Court **DENIES** the petitioner a certificate of appealability.

BACKGROUND

In deciding the petition, the Court must presume the facts set forth by the state courts are correct. 28 U.S.C. § 2254(e)(1). It is Johnson's burden to rebut this presumption with clear and convincing evidence. *Id.* On direct appeal, the Indiana Court of Appeals set forth the facts underlying Johnson's conviction as follows:

> On January 7, 2003, at approximately 9:30 p.m., A.M. parked her truck near her apartment in Indianapolis. As A.M. exited her vehicle, Johnson, Rickie Johnson

("Rickie"), and Richard White ("White") approached her. Johnson stuck a handgun into her side and ordered her to get back into her truck. A.M. told the men that they could "take whatever they wanted," but they insisted that she get into the truck. Johnson entered the driver's seat and Rickie entered the passenger's seat, leaving A.M. sitting between the two men. White rode in the bed of the truck.

Rickie asked A.M. if she had "anything in [her] coat or on [her]" and told her to give him her jacket and jewelry. Rickie then asked if A.M. had any money and went through her purse, taking forty dollars and A.M.'s ATM card. Rickie told Johnson to drive the truck to a bank. As they drove, Johnson threatened to "hurt" A.M. if the men did not get any money, threatened to "bury" her, and called her a " 'b* * * * ' or something like that." Once they arrived at a bank with an ATM, Rickie gave A.M.'s ATM card to White, asked A.M. for her PIN number, and told the number to White. White went to the ATM as Johnson, Rickie, and A.M. rode around the block. When White returned, he said that he was unable to obtain any money. Rickie angrily accused A.M. of lying about the PIN number, and Johnson drove the group a block away from the bank. Rickie and White then exited the truck and walked back toward the bank, leaving A.M. in the vehicle alone with Johnson.

With the other men gone, Johnson began touching A.M.'s leg. A.M. said "no," but Johnson responded, "I'm doing this." Johnson then stuck his hands down A.M.'s pants and penetrated her vagina with his finger. Johnson told A.M. to remove her tampon, and A.M. lowered her pants and did so. Johnson then removed his own pants and penetrated A.M.'s vagina with his penis while holding the gun against her shoulder. Johnson continued intercourse until he ejaculated, then told A.M. to put her pants back on.

Rickie and White returned to the car, and Rickie said that they were still unable to obtain any money. Johnson moved to the bed of the truck, while White entered the driver's seat and Rickie entered the passenger's seat, again leaving A.M. sitting in the middle. White drove to a garage, and Johnson pulled A.M. from the truck. All four entered the garage by crawling under the partially-open garage door.

2

Once they were all in the garage, Rickie told A.M. "that since they didn't get any money from [her] that [she] was going to pay for it." Rickie then unbuttoned his pants and "showed that he wanted oral sex." A.M. was "scared" and "intimidated" because she was aware that the men had a gun, so she complied with Rickie's request. As A.M. was performing oral sex on Rickie, he told her to get down onto her knees, which she did. White then approached, and Rickie told A.M. to get up, turn around, and pull her pants down. A.M. continued oral sex with Rickie, and White entered her vaginally from behind. After a short period of time, both Rickie and White backed away from A.M.

Johnson then approached A.M. with his pants down and told her that he wanted oral sex. A.M. complied, then Johnson told A.M. to stand up and sit on the edge of the car that was in the garage. From this position, Johnson entered A.M. vaginally for a brief period, and then requested further oral sex, which A.M. did. Next, Johnson turned A.M. around and entered her vaginally from behind. While he was behind A.M., Johnson put his penis into her anus. When A.M. moved forward and told Johnson that she was in pain, Johnson "moved down" and entered her vaginally. Johnson again told A.M. to turn around to face him and had her lay back on the car. Johnson entered her vaginally from the front and continued intercourse until he ejaculated, and then he moved back, pulled up his pants, and walked away.

As they exited the garage, A.M. saw that Johnson was holding a gun. Johnson told A.M. to get into the back of the truck, and he lay down next to her. While the two lay next to each other, Johnson put the gun between A.M.'s legs and asked her if she "want[ed] to get shot in [her] pussy." The truck eventually came to a stop and Rickie and White told Johnson to get A.M. out of the truck. Johnson refused and told the other men that he wanted to take A.M. with them. After driving for a bit longer, Rickie and White again stopped and told Johnson to get A.M. out of the truck. This time Johnson agreed, and A.M. was allowed to crawl out of the truck and walk away. As A.M. walked away, she could see the shadow of the truck, created by a streetlight, on the side of a building. In the shadow, A.M. could see that Johnson was standing in the back of the truck pointing the gun at her. As the truck started to move, Johnson stumbled and then sat down. The truck backed up past A.M. and drove

3

> away, and A.M. went to a nearby house, where someone called 911.
>
> A.M. was taken to Wishard Hospital for treatment and evidence collection. An examination showed multiple vaginal injuries. A.M. told the doctor that she had been anally penetrated and the doctor noted "multiple abrasions between the vagina, lower vaginal orifice and the upper rectum, or upper anal area."

*Johnson v. State*, 837 N.E.2d 209, 211-13 (Ind. Ct. App. 2005) (internal citations omitted). White entered a plea agreement with the state, and Johnson and Rickie were tried together in a trial that was bifurcated into a guilt phase and an aggravating circumstances phase. *Id.* Both were found guilty. *Id.* Johnson was convicted of rape, robbery, criminal deviate conduct, and criminal confinement. *Id.* at 213. The jury also found beyond a reasonable doubt that the state had proven several aggravating circumstances. *Id.* The court sentenced Johnson to an aggregate prison term of 151 years. *Id.* at 213-14.

He appealed, raising two arguments: (1) the evidence was insufficient to support the criminal deviate conduct count; and (2) the trial court abused its discretion in imposing a sentence. *Id.* at 214. The Indiana Court of Appeals affirmed. *Id.* at 214-16. Johnson filed a petition to transfer to the Indiana Supreme Court, raising the same two claims. (DE # 6-6 at 1-14.) The petition was denied, *Johnson v. State*, 855 N.E.2d 966 (Ind. 2006) (Table), and he did not seek review in the U.S. Supreme Court. (*See* DE #1 at 2.)

Thereafter, Johnson filed a petition for post-conviction

relief alleging ineffective assistance of trial and appellate counsel and other claims. *Johnson v. State*, No. 49A042-1103-PC-195, slip op. at 1 (Ind. Ct. App. Mar. 29, 2012). He was represented by two privately retained attorneys in the post-conviction proceedings. *Id.* Following a two-day evidentiary hearing, the petition was denied. *Id.* at 2-3. Johnson appealed *pro se*. *Id.* He did not challenge the denial of his claims on the merits, but instead claimed solely that he was deprived of effective assistance of counsel in the post-conviction proceedings. *Id.* at 1-2. The Court of Appeals affirmed, and the Indiana Supreme Court denied his petition to transfer. *Johnson v. State*, 971 N.E.2d 1214 (Ind. 2012) (Table). He did not seek review in the U.S. Supreme Court. (DE #1 at 3.)

Thereafter, Johnson filed a federal habeas petition raising the following claims: (1) his trial attorneys were ineffective on numerous grounds; (2) his appellate attorney was ineffective in failing to raise certain arguments on direct appeal; (3) the trial court violated his due process rights in imposing a sentence; and (4) his post-conviction attorneys were ineffective. (DE #1 at 3-30.)

DISCUSSION

Johnson's petition is governed by the provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA").

5

*See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA allows a district court to issue a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Court can grant an application for habeas relief if it meets the stringent requirements of 28 U.S.C. § 2254(d), set forth as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under this deferential standard, a federal habeas court must "attend closely" to the decisions of state courts and "give them full effect when their findings and judgments are consistent with federal law." *Williams v. Taylor*, 529 U.S. 362, 383 (2000). A state court decision is "contrary to" federal law if the court arrives at a conclusion opposite to that reached by the Supreme Court or reaches an opposite result in a case involving facts materially indistinguishable from relevant Supreme Court precedent.

*Bell v. Cone*, 535 U.S. 685, 694 (2002). A federal court may grant habeas relief under the "unreasonable application" clause if the state court identifies the correct legal principle from Supreme Court precedent but unreasonably applies that principle to the facts of the petitioner's case. *Wiggins v. Smith,* 539 U.S. 510, 520 (2003). To warrant relief, a state court's decision must be more than incorrect or erroneous; it must be "objectively" unreasonable. *Id.* In other words, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, —U.S.—, 131 S. Ct. 770, 786 (2011).

Here, the state argues that Johnson's first three claims are procedurally defaulted, because they were not properly presented in one complete round of state review. (DE #6 at 8-11.) The Court agrees. Before considering the merits of a claim, the Court must ensure that the state courts have been given the first opportunity to address and correct violations of their prisoner's federal rights. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). For that opportunity to be meaningful, the petitioner must fairly present his constitutional claim in one complete round of state review, either on direct appeal or on post-conviction review. *Baldwin v. Reese*, 541 U.S. 27, 30-31 (2004); *Boerckel*, 526 U.S. at 845. This includes seeking discretionary review in the state court

7

of last resort. *Boerckel*, 526 U.S. at 848. Under the companion procedural default doctrine, a federal court is precluded from reaching the merits of a claim when: (1) the claim was presented to the state courts and was denied on the basis of an adequate and independent state procedural ground; or (2) the claim was not presented to the state courts and the time for doing so has passed under state law. *Coleman v. Thompson*, 501 U.S. 722, 735 (1991).

Here, Johnson raised claims of ineffective assistance of trial and appellate counsel in the post-conviction proceedings, but he did not raise these claims on appeal to the Indiana Court of Appeals. Instead, he focused entirely on alleged errors made by post-conviction counsel. *Johnson*, No. 49A042-1103-PC-195, slip op. at 1. Johnson's failure to raise these claims at each level of state review constitutes a procedural default.

As to the sentencing claim, Johnson challenged alleged errors at sentencing on direct appeal, but his claims were based entirely on state law. (*See* DE # 6-6 at 1-12.) To properly exhaust, the petitioner must "present both the operative facts and the legal principles that control each claim to the state judiciary." *Stevens v. McBride*, 489 F.3d 883, 894 (7th Cir. 2007). This includes alerting the state court to the "federal nature" of the claim. *Baldwin*, 541 U.S. at 33. Johnson may not assert a federal due process claim in this proceeding that was not presented to the state courts, nor may he seek federal habeas relief based on

8

alleged errors of state law at sentencing. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). Accordingly, this claim is defaulted as well.

A habeas petitioner can overcome a procedural default by showing both cause for the default and a resulting prejudice. *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977). Cause sufficient to excuse a procedural default is defined as "some objective factor external to the defense" which prevented the petitioner from pursuing his constitutional claim in state court. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Routine matters such as a petitioner's *pro se* status or lack of knowledge of the law do not establish cause to excuse a procedural default. *See Smith v. McKee*, 598 F.3d 374, 385 (7th Cir. 2010); *Harris v. McAdory*, 334 F.3d 665, 669 (7th Cir. 2003).

Alternatively, the petitioner can overcome a procedural default by establishing that the Court's refusal to consider a defaulted claim would result in a fundamental miscarriage of justice. *House v. Bell*, 547 U.S. 518, 536 (2006). This exception requires the petitioner to establish that "a constitutional violation has resulted in the conviction of one who is actually innocent of the crime." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). A petitioner who asserts actual innocence "must *demonstrate* innocence; the burden is his, not the state's[.]" *Buie v. McAdory*, 341 F.3d 623, 626-27 (7th Cir. 2003) (emphasis in original). Furthermore, actual innocence means "factual innocence, not mere

9

legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). This is a difficult standard to meet, and such claims are "rarely successful." *Schlup*, 513 U.S. at 324.

Johnson filed a lengthy traverse in support of his petition, but he does not directly respond to the state's procedural default arguments or provide grounds for excusing his defaults, and instead focuses on the merits of his claims.[1] (DE #11-1.) Because he has failed to provide grounds for excusing his defaults, his first three claims cannot be reviewed on the merits.

In his final claim, Johnson argues that he was denied effective assistance of counsel in the post-conviction proceedings. (DE #1 at 26-30.) The state argues that this claim not does not provide a cognizable basis for granting federal habeas relief. Again, the Court agrees. As a general matter, errors in the post-conviction proceedings are beyond the scope of federal habeas

---

[1] Although Johnson does not expressly make this argument, the Court has considered whether his claim that appellate counsel failed to raise a proper challenge to his sentence on direct appeal could be used to excuse his procedural default of the sentencing claim. Although attorney error can constitute cause for excusing a procedural default, the exhaustion doctrine requires that an ineffective assistance claim be presented to the state court as an independent claim before it may be used to establish cause for a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000); *Murray*, 477 U.S. at 490. If the ineffective assistance claim being used to excuse a procedural default was itself not properly raised in state court, "the petitioner will be fully defaulted." *Dellinger v. Bowen*, 301 F.3d 758, 767 (7th Cir. 2002). Here, as stated above, Johnson did not properly exhaust a claim of ineffective assistance of appellate counsel in one complete round of state review, and so he is fully defaulted.

review. *Pennsylvania v. Finley*, 481 U.S. 551 (1987); *Montgomery v. Meloy,* 90 F.3d 1200, 1206 (7th Cir. 1996). Moreover, the AEDPA specifically provides: "The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(i). Accordingly, this claim does not present a cognizable basis for overturning Johnson's conviction.

In his traverse, Johnson suggests that he is nevertheless entitled to relief under *Martinez v. Ryan*, ––U.S.––, 132 S. Ct. 1309 (2012). His citation to that case is unavailing. In *Martinez,* the Supreme Court reaffirmed that a federal habeas petitioner is precluded from asserting ineffective assistance of post-conviction counsel as a ground for overturning his conviction. *Id.* at 1316. Nevertheless, the Court held that in certain circumstances, errors by post-conviction counsel may be used to excuse a procedural default of a claim based on ineffective assistance of trial counsel. *Id.* at 1321-22. Here, Johnson is asserting ineffective assistance of post-conviction counsel as a free-standing claim, which he cannot do even after *Martinez*.

Even if Johnson were trying to assert an error by post-conviction counsel as grounds to excuse a procedural default, his reliance on *Martinez* would still be unavailing. As explained above, Johnson's default of his ineffective assistance claims

11

occurred on post-conviction appeal, when he was proceeding *pro se*, not due to an error by post-conviction counsel. Furthermore, the limited exception adopted in *Martinez* applies to defaulted claims of ineffective assistance of trial counsel when state law precludes the petitioner from raising such a claim until the post-conviction proceedings. *Martinez*, 132 S. Ct. at 1317-18. In Indiana, by contrast, a claim that trial counsel was ineffective can be raised either on direct appeal or in a post-conviction proceedings. *Benefiel v. State*, 716 N.E.2d 906, 911 (Ind. 1999). Thus, *Martinez* is inapplicable to Johnson's case.[2] For these reasons, the petition will be denied.

Pursuant to RULE 11 OF THE RULES GOVERNING SECTION 2254 CASES, the Court must either issue or deny a certificate of appealability in all cases where it enters a final order adverse to the petitioner. To obtain a certificate of appealability, the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in

---

[2] Johnson has also failed to establish that his post-conviction attorneys provided ineffective assistance. As the Indiana Court of Appeals concluded, the record shows that Johnson's two attorneys presented witnesses on his behalf at a two-day evidentiary hearing, tendered numerous exhibits, obtained leave to amend the petition during the hearing to add another claim, obtained the trial record, prepared a detailed proposed final order, and otherwise vigorously represented him throughout the post-conviction proceedings. *Johnson*, No. 49A04-1103-PC-195, slip op. at 4-5. This case is not akin to *Martinez*, where the attorney filed a brief stating that she could find no colorable claims to raise on the petitioner's behalf. *Martinez*, 132 S. Ct. at 1314.

a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quote marks and citation omitted).

As is fully explained above, Johnson's claims are procedurally defaulted or otherwise non-cognizable. Nothing before the Court suggests that jurists of reason could debate the outcome of the petition or find a reason to encourage Johnson to proceed further. Accordingly, the Court declines to issue him a certificate of appealability.

CONCLUSION

For the reasons set forth above, the petition (DE #1) is **DENIED**, and the Court **DENIES** the petitioner a certificate of appealability.

**DATED: March 19, 2013**                /s/ RUDY LOZANO, Judge
                                         **United States District Court**